UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EARTH ISLAND INSTITUTE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ANDREW R. WHEELER, et al., <br><br> Defendants. | Case No. 20-cv-00670-WHO <br><br> **ORDER RE MOTION TO DISMISS** <br> Re: Dkt. No. 16 |

    Defendants Andrew Wheeler and the U.S. Environmental Protection Agency (collectively, "EPA") bring this motion to dismiss plaintiffs' (collectively, "Earth Island") cause of action for violation of the Clean Water Act ("CWA"). At issue is whether, as a matter of law, the CWA imposes a nondiscretionary duty on the EPA to update or amend the National Contingency Plan ("NCP"), a plan for responding to oil and hazardous substance contamination that is mandated by the CWA; if so, Earth Island is allowed to bring a cause of action pursuant to the CWA's citizen-suit provision. I find that the EPA has such a duty and its motion is DENIED. In addition, I DENY the American Petroleum Institute's motion to intervene because this lawsuit addresses the agency's procedure, not its substantive decision.

**BACKGROUND**

    Earth Island filed this action on January 30, 2020, alleging causes of action under the CWA and the Administrative Procedure Act ("APA"). Dkt. No. 1. In brief, Earth Island alleges that the current NCP is "obsolete and dangerous" because, among other reasons, it continues to permit the use of chemical dispersants that are now known to be harmful to humans and the environment. *Id.* ¶¶ 1-2. It contends that in failing to update the NCP in over a quarter-century, the EPA is in violation of its obligations under the CWA. *Id.* ¶¶ 2-3. It asserts that I have jurisdiction over this case pursuant to the citizen-suit provision of the CWA, 33 U.S.C. §

1365(a)(2). *Id.* ¶ 8. It states that for the same reasons, the EPA violated its duties under the APA to conclude a matter presented to it within a reasonable time. *Id.* ¶ 4.

The EPA filed a motion to dismiss the CWA claim (but not the APA claim) on March 31, 2020. Dkt. No. 16. In addition, the American Petroleum Institute ("API") filed a motion to intervene, to which the EPA filed a notice of non-opposition. Dkt. Nos. 23, 27. Earth Island opposes both motions. Dkt. Nos. 26, 29.

**LEGAL STANDARD**

**I.  MOTION TO INTERVENE**

Federal Rule of Civil Procedure 24 provides for both intervention as a matter of right and permissive intervention. Under Rule 24(a), a party may intervene as a matter of right if (i) a federal statute gives it an unconditional right to intervene, or (ii) the party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a).

Permissive intervention is governed by Rule 24(b) and provides that the court may permit a party to intervene if (i) there is a conditional right to intervene provided in a federal statute, (ii) the party's claim or defense shares a "common question of law or fact" with the main action, and (ii) the intervention will not unduly "delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b). "In ruling on a motion to intervene, a district court is required to accept as true the non-conclusory allegations made in support of [the] intervention motion." *Koike v. Starbucks Corp.*, 602 F.Supp.2d 1158, 1160 (N.D. Cal. 2009) (internal quotations omitted).

**II.  RULE 12(B)(1)**

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure is a challenge to the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the authority to grant the relief requested. *Id.* A challenge pursuant to Rule 12(b)(1) may be facial or

2

factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the jurisdictional challenge is confined to the allegations pled in the complaint. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The challenger asserts that the allegations in the complaint are insufficient "on their face" to invoke federal jurisdiction. *See Safe Air Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). To resolve this challenge, the court assumes that the allegations in the complaint are true and draws all reasonable inferences in favor of the party opposing dismissal. *See Wolfe*, 392 F.3d at 362.

### III. RULE 12(B)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citation omitted). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the

3

proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

**DISCUSSION**

The parties dispute whether this motion is properly resolved pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction, or pursuant to Rule 12(b)(6) for failure to state a claim. Dkt. No. 16 at 2, 4-6; Dkt. No. 26 at 7-10; Dkt. No. 28 at 3-6. A ruling under either subsection of Rule 12 involves the legal question of whether Earth Island may bring a cause of action under the CWA for a violation of 33 U.S.C.A. § 1321(d)(3). Because I find that Earth Island may bring a CWA claim, as discussed below, I find that it has satisfied the requirements of both Rule 12(b)(1) and Rule 12(b)(6).

## I.   LEGAL FRAMEWORK

33 U.S.C.A. § 1321, titled "[o]il and hazardous substance liability," provides the CWA's provisions related to the NCP. Subsection (d)(1) states that "[t]he President shall prepare and publish a National Contingency Plan for removal of oil and hazardous substances pursuant to this section." 33 U.S.C.A. § 1321(d)(1). This "shall provide for efficient, coordinated, and effective action to minimize damage from oil and hazardous substance discharges, including containment, dispersal, and removal of oil and hazardous substances, and shall include" various actions not at issue here. *Id.* § 1321(d)(2). Subsection (d)(3)—the provision at issue in this motion— states that "[t]he President may, from time to time, as the President deems advisable, revise or otherwise amend the National Contingency Plan." *Id.* § 1321(d)(3).[1] Subsection (d)(4) states that "[a]fter publication of the National Contingency Plan, the removal of oil and hazardous substances and actions to minimize damage from oil and hazardous substance discharges shall, to the greatest extent possible, be in accordance with the National Contingency Plan." *Id.* § 1321(d)(4).

The CWA's citizen suit provision, pursuant to which Earth Island brings this action, states that a citizen may bring a civil action "against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator." 33 U.S.C.A. § 1365(a)(2). To compel agency action under this provision, "a

---

[1] The President delegated this authority to the EPA. Exec. Order No. 12777, 56 Fed. Reg. 54,757 (Oct. 22, 1991).

citizen suit must point to a nondiscretionary duty that is 'readily-ascertainable' and not 'only [] the product of a set of inferences based on the overall statutory scheme.'" *Our Children's Earth Found. v. U.S. E.P.A.*, 527 F.3d 842, 851 (9th Cir. 2008) (citation omitted).  In other words, courts "must be able to identify a specific, unequivocal command from the text of the statute at issue using traditional tools of statutory interpretation; it's not enough that such a command could be teased out from an amalgamation of disputed statutory provisions and legislative history coupled with the EPA's own earlier interpretation." *WildEarth Guardians v. McCarthy*, 772 F.3d 1179, 1182 (9th Cir. 2014) (citations omitted).

General canons of statutory interpretation require that courts begin with the language of the statute to determine whether it has a plain meaning.  *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009).  Unless otherwise defined, words will be interpreted in accordance with their ordinary and contemporary meaning.  *The Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1060 (9th Cir. 2003), *amended on reh'g en banc in part sub nom. Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*, 360 F.3d 1374 (9th Cir. 2004).  "It is also a fundamental canon that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."  *Id.* (citations omitted); *see also City of Los Angeles v. Barr*, 941 F.3d 931, 940 (9th Cir. 2019) ("In construing specific words in a statute, we must also look to the language and design of the statute as a whole . . . and read the specific words with a view to their place in the overall statutory scheme.") (citations omitted).  "In every case, it is the intent of Congress that is the ultimate touchstone."  *Barr*, 941 F.3d at 940 (citations omitted).

No court has addressed the question of whether Section 1321(d)(3) creates a non-discretionary duty to revise or amend the NCP.  The Ninth Circuit cases cited by the parties are instructive but do not provide clear guidance on the issue at hand because they address different statutes.

In *Our Children's Earth Foundation*, which analyzed a different section of the CWA, the parties did not dispute that the EPA was required to review the relevant guidelines and limitations for possible revision or that any such formal revisions must be in accord with detailed statutory criteria.  *Our Children's Earth Found.*, 527 F.3d at 849.  The parties instead disputed whether the

5

EPA was required to consider the criteria as part of its review process. *Id.* The court examined the various provisions of the statute and found that "[t]he legislative and regulatory maze" that resulted did not satisfy the "readily ascertainable" standard for non-discretionary duties. *Id.* at 851.

In *WildEarth Guardians v. McCarthy*, the court addressed whether the Clean Air Act imposed a nondiscretionary duty upon the EPA in providing that "[i]n the case of pollutants for which national ambient air quality standards are promulgated after August 7, 1977, [the Administrator] shall promulgate such regulations not more than 2 years after the date of promulgation of such standards." 772 F.3d at 1180–81. There, the court found that the EPA administrator was required to promulgate regulations, but that the precise scope was unclear. *Id.* The court found that both interpretations advanced by the parties were plausible but that ultimately the scope of the nondiscretionary duty was ambiguous and not clear-cut. *Id.* at 1181–82. Therefore, it affirmed dismissal of the complaint.

In a more recent case, the Ninth Circuit addressed whether the EPA had a non-discretionary duty to act under the Toxic Substances Control Act ("TSCA"). *In re A Community Voice*, 878 F.3d 779 (9th Cir. 2017) ("*Community Voice*"). The court addressed a provision stating that "[t]he regulations of the Administrator under this subchapter shall include such recordkeeping and reporting requirements as may be necessary to insure the effective implementation of this subchapter. The regulations may be amended from time to time as necessary." 15 U.S.C.A. § 2687. The court found that this was clearly "an ongoing duty" and that the "statutory framework clearly indicates that Congress did not want EPA to set initial standards and then walk away, but to engage in an ongoing process, accounting for new information, and to modify initial standards when necessary to further Congress's intent." *Community Voice*, 878 F.3d 779, 784. Further, the court found that "because the EPA granted the Petitioners' rulemaking petition, it came under a duty to conclude the rulemaking proceeding within a reasonable time." *Id.* at 785. It also noted that "failing to find a duty would create a perverse incentive for the EPA" to grant petitions for rulemaking but take no action in order to avoid judicial review. *Id.* at 785-86.

## II. ANALYSIS

To begin, it is clear that the EPA had a nondiscretionary duty to promulgate the NCP in the first instance. It is undisputed that the EPA has discharged that duty. Dkt. No. 26 at 3. The question is whether Section 1321(d) requires, and not merely permits, the EPA to revise the NCP through its provision that "[t]he [EPA] may, from time to time, as the [EPA] deems advisable, revise or otherwise amend the National Contingency Plan," and that 33 U.S.C.A. § 1321(d)(3); *see also* Dkt. No. 1 ¶ 129.

The EPA focuses on the plain language of this provision, stressing that the use of the word "may" as opposed to "shall" demonstrates that the duty is discretionary, in contrast with the use of the word "shall" in Section 1321(d)(1). Dkt. No. 28 at 4-5. In addition, it argues that the use of the words "from time to time" and "as the [Administrator] deems advisable" also plainly establish that the statute confers discretion. Dkt. No. 16 at 5; Dkt. No. 28 at 4-5.

If I were tasked with interpreting this section without context, I would agree that this language suggests discretionary, not mandatory, authority. But the EPA fails to address the authority, cited by Earth Island, that the word "may" does not always indicate discretionary or permissive action. *See* Dkt. No. 26 at 14-15. In *Community Voice,* the Ninth Circuit interpreted an almost identical provision to require action, notwithstanding the use of the terms "may," "from time to time," and "as necessary." While the EPA suggests that the difference between "as necessary" and "as advisable" is significant, it has no authority for that position. Dkt. No. 28 at 6. Although those terms might occasionally be susceptible of different interpretations, in the context of both the statutes in *Community Voice* and Section 1321(d)(3) the terms indicate the same thing: the regulations should be amended as appropriate, but without a specified deadline. They do not determine the underlying question of whether the provision is discretionary in the context of each statute.

To inform the meaning of Section 1321(d)(3), well-settled rules of statutory interpretation instruct that I look to the context of the statute. I start with the remainder of Subsection 1321(d). Subsection (d)(1) requires the EPA to "prepare and publish" the NCP. Subsection (d)(2) requires the NCP to provide "efficient, coordinated, and effective action." Mandatory aspects of the NCP

7

include the establishment of Coast Guard strike teams and a national center to assist in carrying out the NCP, "[a] system of surveillance and notice designed to safeguard against as well as ensure earliest possible notice of discharges of oil and hazardous substances and imminent threats of such discharges to the appropriate State and Federal agencies," "[p]rocedures and techniques to be employed in identifying, containing, dispersing, and removing oil and hazardous substances," and a schedule that identifies dispersants that may be used to carry out the NCP and how they may be used. *Id.* § 1321(d)(2). The final subsection of the provision regarding the NCP states that after the publication of the NCP, removal of oil and hazardous substances "shall, to the greatest extent possible, be in accordance with" the NCP. *Id.* § 1321(d)(4).

It is true that Subsection (d)(3) separately addresses amendment of the NCP. But Section 1321(d)'s overall intent is to require a number of activities to ensure the efficacy of the NCP and the ability to safely provide for mitigation of any pollution. The requirement of Subsection (d)(2) is particularly instructive as it provides for continuing operations and mandates an "effective" and efficient" response to oil and hazardous substance pollution. Overall, Section 1321(d) contemplates an ongoing duty that in turn strongly suggests that the duty to update and revise the NCP "as advisable" is not discretionary, but required.

The facts alleged illustrate why a reading of Subsection (d)(3) as discretionary would be illogical in the context of the statute. The EPA's interpretation would allow it to fail to review, update, or amend the NCP for decades, despite scientific advances, the occurrence of incidences involving discharge of oil and hazardous substances, and an internal report concluding that the NCP was outdated and inadequate. *See* Dkt. No. 1 ¶¶ 107-121. Such inaction would frustrate the purpose of the NCP to achieve an effective and efficient response to pollution.

The remainder of Section 1321 and the intent of Congress in enacting the CWA reinforces an interpretation of Subsection 1321(d)(3) as nondiscretionary. Section 1321(b) provides a "Congressional declaration of policy against discharges of oil or hazardous substances," which states that "it is the policy of the United States that there should be no discharges of oil or hazardous substances into or upon the navigable waters of the United States. . ." The "declaration of goals and policy" in the CWA provides that "[t]he objective of this chapter is to restore and

maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C.A. § 1251(a). In addition, "it is the national policy that the discharge of toxic pollutants in toxic amounts be prohibited." *Id.* § 1251(a)(3).

As with the subsection governing the NCP, these policies reflect an ongoing intent to prohibit the discharge of toxic substances and maintain the integrity of the nation's waters. This is necessarily a continuing task. In this context, Section 1321(d)(3) is properly interpreted to create a nondiscretionary obligation for the Administrator to revise or amend the NCP. While there is no set date or timeline by which the Administrator must do so, the other provisions and purpose of the statute make clear that it must do so in order to achieve the purpose of the CWA and the purpose of the NCP.

This case is more analogous to the Ninth Circuit's decision in *Community Voice* than to the cases in this circuit upon which the EPA relies. In *Community Voice*, as here, the EPA was required to promulgate the regulations in the first instance. 878 F.3d at 784. As discussed, the provision at issue was similar in wording to Section 1321(d)(3). As here, the court found that this wording reflected an ongoing duty, which included amending the initial standard authorized by Congress. *Id.* As the court noted, "Congress set EPA a task, authorized EPA to engage in rulemaking to accomplish that task, and set up a framework for EPA to amend initial rules and standards in light of new information." *Id.* at 785. Further, although *Community Voice* addressed provisions of a different statute, many of the same concerns are present here: a desire to eliminate hazardous substances that could harm the public.

The EPA's remaining arguments are not persuasive. It first argues that because Subsection (d)(3) lacks a date-certain deadline to amend the NCP, the statute must be read as conferring discretionary authority. Dkt. No. 16 at 5-6. The EPA is correct that the statute intentionally does not provide a date-certain deadline. But the cases that it cites for the position that any provision that does not provide a date-certain deadline is discretionary are not binding on this court, and such a rule has not been adopted by the Ninth Circuit. *See Nat. Res. Def. Council, Inc. v. Perry*, 302 F. Supp. 3d 1094, 1100 (N.D. Cal. 2018), *aff'd sub nom. Nat. Res. Def. Council, Inc. v. James R. Perry*, 940 F.3d 1072 (9th Cir. 2019) (declining to follow rule in *Sierra Club v. Thomas*, 828

F.2d 783 (D.C. Cir. 1987)).  More importantly, the EPA's argument contravenes the Ninth Circuit's decision in *Community Voice*, which found a nondiscretionary duty notwithstanding a lack of a date-certain deadline.  878 F.3d at 784.

In addition, the EPA argues that the duty imposed by the statute is at best ambiguous, fails to satisfy the "readily ascertainable" requirement set forth in *Children's Earth Foundation*, and relies upon an impermissible "cobbling together" of disparate provisions of the CWA.  Dkt. No. 28 at 5-6.  However, the statute here is not a legal and regulatory "maze" in which it is difficult to identify the underlying duty or the scope of that duty.  Rather, the EPA's duty here is quite clear: to revise or amend the NCP in light of new information.  Because the duty itself is clear-cut, the only question is whether it is discretionary or not.  As discussed, I find that it is not discretionary.

### III. MOTION TO INTERVENE

Earth Island challenges whether API has a sufficient interest such that it would be entitled to intervene in this matter, either permissively or as a matter of right.  *See* Dkt. No. 29.  It argues that the allegations in the complaint only attack the procedure used by the EPA (e.g., the lack of timeliness in updating the regulations) and not the substance of the regulations.  It also contends that it will be prejudiced by API's intervention due to "irrelevant" briefing.  *Id.*

As Earth Island points out, courts have denied motions to intervene in cases like this one. *See Our Children's Earth Found. v. U.S. E.P.A.*, No. C 05-05184 WHA, 2006 WL 1305223 (N.D. Cal. May 11, 2006); *Med. Advocates For Healthy Air v. Johnson*, No. C 06-0093 SBA, 2006 WL 1530094 (N.D. Cal. June 2, 2006); *Sierra Club v. United States Envtl. Prot. Agency,* No. 13-CV-2809-YGR, 2013 WL 5568253 (N.D. Cal. Oct. 9, 2013).  In these cases, the court found that the intervening parties' interests would remain the same regardless of the outcome of the litigation, because the plaintiff challenged the agency's procedure and not its substantive decision.  *See Our Children's Earth Found*, 2006 WL 1305223, at *2.  Instead, the agency's rule-making process would provide the means to adequately protect the intervening parties' interests.  *Id.*[2]

---

[2] API seeks to distinguish these cases because in those cases, the statute at issue provided a set deadline.  Dkt. No. 33 at 5-6.  However, the lack of a deadline does not change the underlying fact that this lawsuit challenges the procedure and not the substance of the NCP.

10

This case is analogous. Earth Island seeks only declaratory judgments that the EPA failed to perform a nondiscretionary duty under the CWA and thus violated the APA, an order to the EPA to issue a final rule to update the NCP, and attorneys' fees and costs. Dkt. No. 1 at 29. API's argument that this lawsuit involves the substance of the NCP indicates that its participation will confuse the issues and prejudice Earth Island. *See Sierra Club*, 2013 WL 5568253, at *5 (allowing intervention and "opening the door to these additional contentions would only serve to confuse the matters at issue in the complaint and to delay the proceedings unnecessarily."). Further, API recognizes that it will have the opportunity to comment on any changes during the EPA's rulemaking process, but claims that this is irrelevant. Dkt. No. 33 at 6. Not so; the API's ability to comment on substantive changes, as opposed to any procedural challenges, is undoubtedly relevant to the interests it asserts related to the *contents* of the NCP. *See* Dkt. No. 23 at 3. In short, API has not articulated a cognizable interest that would merit permissive intervention or intervention of right in this proceeding. Its motion is DENIED.

## CONCLUSION

For the above reasons, the EPA's motion to dismiss is DENIED and the API's motion to intervene is DENIED.

**IT IS SO ORDERED.**

Dated: June 2, 2020

William H. Orrick
United States District Judge