CLAUDIA POLSKY (CA Bar No. 185505)
Environmental Law Clinic
UC Berkeley School of Law
434 Boalt Hall (North Addition)
Berkeley, CA 94720-7200
Phone: (510) 642-5398
Fax: (510) 643-4625
Email: cpolsky@law.berkeley.edu

*Counsel for Plaintiffs ALERT Project, Alaska Community Action on Toxics, Cook Inletkeeper, Rosemary Ahtuangaruak, And Kindra Arnesen*

KRISTEN MONSELL (CA Bar No. 304793)
Center for Biological Diversity
1212 Broadway, Suite 800
Oakland, CA 94612-1810
Phone: (510) 844-7137
Fax: (510) 844-7150
Email: kmonsell@biologicaldiversity.org

*Counsel for Plaintiff Center for Biological Diversity*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALERT PROJECT, EARTH ISLAND INSTITUTE; ALASKA COMMUNITY ACTION ON TOXICS; CENTER FOR BIOLOGICAL DIVERSITY; COOK INLETKEEPER; ROSEMARY AHTUANGARUAK; AND KINDRA ARNESEN,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>MICHAEL REGAN, in his official capacity as Administrator; and the UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>　　　　Defendants. | Case No. 3:20-cv-00670-WHO<br><br>**DECLARATION OF PAMELA MILLER** |

DECLARATION OF PAMELA MILLER

I, Pamela Miller, declare as follows:

1. I have personal knowledge of all the facts set forth below, and if called as a witness, I could and would testify competently to them. Expressions of opinion reflect my own personal opinions and judgment.

2. I am a resident of Anchorage, Alaska. I hold a Bachelor of Arts in Biology from Wittenberg University in Springfield, Ohio, and a Master of Environmental Science in Aquatic Biology and Environmental Science from Miami University in Oxford, Ohio.

3. I founded Alaska Community Action on Toxics (ACAT) in 1997, and have held the position of Executive Director ever since. As Executive Director, I am responsible for the overall vision and management of the organization. I supervise all staff and maintain relations with the Board of Directors. I also direct the scientific aspects of ACAT's work. I am the principal investigator for ACAT's community-based research, funded by the National Institute of Environmental Health Sciences. I am familiar with the organization, membership, policies, and practices of ACAT.

4. In my personal capacity, I am also a financial supporter of ACAT. I am additionally a member of Cook Inletkeeper.

5. ACAT is a 501(c)(3) nonprofit organization. ACAT is funded through individual contributions from supporters, contributions from foundations, and federal research grants.

6. ACAT's main office is located in Anchorage, Alaska. ACAT also has staff and conducts community health research in Gambell and Savoonga, both located on Saint Lawrence Island, Alaska.

7. ACAT's mission is to assure environmental health and justice in Alaska by advocating for environmental and community health.
ACAT believes that everyone has a right to clean air, clean water, and toxic-free food. ACAT works to achieve its goals through collaborative research, science, education, organizing, and advocacy.

8. ACAT employs a community-based approach guided by the following core values: community right-to-know, environmental justice, the precautionary principle, elimination

of the production and release of toxics, rights and sovereignty of Indigenous peoples, and a culture of caring and wellness.

9. ACAT opposes the production and use of toxic chemicals that can harm the environment, wildlife, and people. These chemicals include the dispersants used intensively in oil-spill cleanups.

10. ACAT works primarily with Alaska Native communities who rely on the land and ocean for physical, spiritual, and cultural sustenance. The Alaska Native communities with which ACAT works depend on healthy marine ecosystems, in particular, for hunting, fishing, and food security. ACAT views dispersants as a threat to the marine environment, which sustains the communities that ACAT serves.

11. ACAT conducts public education programs, including presentations, to educate its constituent members about the risks of chemical dispersants. ACAT also shares information about the risks associated with chemical dispersants via direct communications with its supporters, through electronic media and newsletters.

12. ACAT also been involved in a long-term investigation of the Exxon Valdez oil spill's effects on response workers, collaborating with Dr. Riki Ott of plaintiff ALERT. Dr. Ott and I supervised a graduate student intern working on her Master of Public Health degree, Annie O'Neill, who wrote her thesis on "Self-Reported Exposures and Health Status Among Workers from the Exxon Valdez Oil Spill Cleanup" (Yale University, 2003). Annie did the internship with ACAT, and Dr. Ott and I co-supervised her. Information on worker exposures was also included in Dr. Ott's book, *Sound Truth and Corporate Myths* (2005), which ACAT collaborated on. Through this work, we have learned that those workers who had direct contact with dispersants suffered greater adverse health impacts than those who did not.

13. In addition to public education campaigns and investigations, ACAT has participated in administrative procedures to compel the U.S. Environmental Protection Agency (EPA) to update the 1994 National Contingency Plan. Specifically, ACAT, along with other organizations, submitted comments in April 2015 on EPA's then-proposed revisions to the NCP. Those comments emphasized the need for an NCP that protects human health and the

environment, and that specifically considers the effects of oil spill response on subsistence fishing communities and other vulnerable populations unfairly burdened by environmental problems.

14. ACAT has also been involved in prior litigation regarding the use of chemical dispersants. In 2010, ACAT, along with other organizations notified EPA of the organizations' intent to sue EPA, challenging the use of chemical dispersants under the NCP. That Notice of Intent led to a 2012 lawsuit challenging the NCP Product Schedule, in which ACAT was a plaintiff. Finally, ACAT signed on to an October 2019 Notice of Intent to Sue letter sent to the EPA and the U.S. Department of Justice in this lawsuit.

15. ACAT has been forced to expend resources on litigation because of the EPA's failure to complete the rulemaking process initiated in 2015. If the EPA had instead completed its rulemaking in a timely way, ACAT would have been able to devote more of its resources to the community educational events, advocacy, and research that advance ACAT's core mission.

16. In my capacity as Executive Director, I have been the primary person working on dispersant issues for ACAT. I have worked on the issue of chemical dispersants through ACAT since 2002. I estimate that I have spent, in total, a full two to four months working solely on dispersant issues for ACAT.

17. The use of dispersant chemicals in the event of an offshore oil spill would greatly impact the health and cultural well-being of ACAT's supporters, including its board members. One example is ACAT board member Harriet Penayah, a Yupik Elder from the Native Village of Savoonga on Saint Lawrence Island in the Bering Sea.

18. Harriet and her family rely on the harvest of marine fish and marine mammals for spiritual, physical, and cultural sustenance. A significant part of their diet comes from the ocean, including fish like salmon, cod, and halibut, as well as marine mammals like ringed seal, bearded seal, walrus, and bowhead whale.

19. St. Lawrence Island is located in the northern Bering Sea and within the Norton Sound region on the Alaska Outer Continental Shelf. The Norton Sound area experienced oil and

gas development in the 1980s. It is also proposed for oil and gas leasing under the federal Bureau of Ocean Energy Management's Draft Proposed Program for 2019-2024.

20. The use of chemical dispersants in response to an oil spill in the Norton Sound region would impact Harriet and her family's food security by polluting the marine ecosystems on which they depend for food. It would also disrupt the migratory patterns of important marine mammals, such as the bowhead whale. Marine animals form the basis of Harriet's diet and cultural traditions. If chemical dispersants impacted the safety of these food sources, Harriet and her family would not be able to replace these sources with food purchased from a grocery store, due to the deep cultural importance that these animals hold for Harriet and her family.

21. ACAT board member Violet Yeaton, a member of the Sugpiaq people who currently lives in Anchorage, Alaska, would be similarly harmed by the use of chemical dispersants in oil spill response. Violet relies on the marine ecosystem for traditional foods, including seaweeds, intertidal invertebrates, and fish. Cook Inlet off Anchorage is already a site of offshore oil activity—not merely possible future activity—and thus risks of dispersant use are present risks.

22. Violet lived in Port Graham, Alaska, during the Exxon Valdez oil spill. Violet and other Alaska Native peoples in Port Graham saw the marine ecosystems upon which they depended directly affected by the spill. The oil spill made it unsafe to eat the foods they had harvested for generations—foods with great cultural significance. The use of dispersants compounded fears that the food was unsafe to harvest and consume.

23. Personally, I enjoy kayaking, seabird and marine mammal observing, in coastal and marine areas of Alaska that are likely to be harmed by the use of chemical dispersants in the event of any oil spills. I also fish for salmon in Cook Inlet and depend on the health of salmon and other seafood from Cook Inlet, the Gulf of Alaska and Bering Sea as a vital part of my diet and that of my family. The use of dispersants would cause long-term damage to the coastal and marine ecosystems which are important for my well-being and provide food security for my family and me. Additionally, I conduct ecological and toxicological research in the coastal environment of St. Lawrence Island that would be confounded and compromised by the use of

dispersants. The pursuit of this litigation, to prevent the unnecessary use of dispersants in order to protect the health of the marine environment, is for these reasons important to me personally. If U.S. EPA updates the NCP, my interests and the interests of other ACAT supporters will be better protected from the adverse health and environmental effects of dispersant use in Alaska.

24. If U.S. EPA updates the NCP, then ACAT as an organization can focus on its other programmatic priorities, such as reform and proper implementation of state and other federal laws (such as the Toxic Substances Control Act) to prevent harmful exposures to other substances, work on the international Stockholm Convention on Persistent Organic Pollutants, community-based research and advocacy, and educational programs.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this __19__ day of __April__, 2021 in Anchorage, Alaska.

_Pamela K. Miller_
Pamela K. Miller

5

DECLARATION OF PAMELA MILLER